**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

BRANDON GROCE,

                Petitioner,

        v.

UNITED STATES OF AMERICA,

                Respondent.

Civil Action No. 22-4296 (ZNQ)

**OPINION**

**QURAISHI, District Judge**

This matter comes before the Court on Petitioner's motion to vacate his sentence brought pursuant to 28 U.S.C. § 2255. (ECF No. 1.) Also before the Court are Petitioner's two supplemental motions to vacate sentence. (ECF Nos. 9-10, 19.) Following an order to answer, the Government responded to Petitioner's motions. (ECF Nos. 14, 29.) Petitioner also filed a reply. (ECF No. 18.) For the following reasons, Petitioner's motion to vacate and supplemental motions are denied, and Petitioner is denied a certificate of appealability.

## I.      **BACKGROUND**

Petitioner's current conviction arises out of a series of six transactions which occurred between February and September 2019 during which Petitioner, who did not possess a valid federal firearms license, sold firearms to federal confidential sources and undercover ATF agents. (PSR at ¶1.) During his plea colloquy, Petitioner provided the following factual basis for his conviction:

The Court:  On or about February 13, 2019, did you knowingly possess and sell for $600 a Bryco . . . Arms Jennings nine millimeter pistol [and] 50 rounds of nine millimeter Federal ammunition?

[Petitioner]:  Yes, sir.

The Court:  On or about February 28th, 2019, did you knowingly possess and sell for $800 a Glock Model 17 nine millimeter . . . pistol . . . and fifteen rounds of nine millimeter Spear ammunition?

[Petitioner]:  Yes, sir.

The Court:  On or about May 6th, 2019, did you knowingly possess and sell for $550 a Ruger Model Super Red Hawk 44 caliber revolver . . . and six rounds of 44 caliber Remington ammunition?

[Petitioner]:  Yes, sir.

The Court:  On or about August 5, 2019[,] did you knowingly possess and sell for $700 a Smith and Wesson Model 60-14 .357 caliber revolver . . . and five rounds of .357 caliber Federal ammunition?

[Petitioner]:  Yes, sir.

The Court:  On or about August 12th, 2019, did you knowingly possess and sell for $800 a Smith and Wesson Model SD9VE . . . nine millimeter pistol . . . and 15 rounds of nine millimeter CCI ammunition?

[Petitioner]:  Yes, sir.

The Court:  On or about September 11, 2019, d[id] you knowing[ly] possess and sell [a] GSG model GSG-522 .22 caliber rifle . . . and approximately 50 rounds of .22 caliber ammunition?

[Petitioner]:  Yes, sir.

The Court:  And again on September 11, 2019, did you knowingly possess and sell a Kel-Tec Model P3AT .380 caliber pistol with an obliterated serial number and approximately five rounds of .380 caliber ammunition?

[Petitioner]:  Hum, yes, sir.

The Court: . . . . Did you receive $1,300.00 for the items you sold on September 11, 2019?

[Petitioner]:  Yes, sir.

The Court:  And did you make all these sales in Gloucester County within the District of New Jersey?

[Petitioner]:  Yes, sir.

The Court:  And prior to your first sale that we talked about in February of 2019 and continuing through the last sale in September 2019, did you know that you had previously been convicted of at least one felony offense, meaning a crime punishable by imprisonment for a term exceeding one year?

[Petitioner]:  Yes, sir.

(Docket No. 20-675 at ECF No. 47 at 23-26.)  Petitioner also confirmed in his colloquy that he understood that the weapons had travelled in interstate commerce, that the .22 caliber rifle had an overall length of less than 26 inches, that at least six of the firearms were operable at the time of sale, that Petitioner did not have a federal firearms license permitting the sale of weapons to third parties, and that he knew that it was illegal for him to possess and sell these firearms.  (*Id.* at 26.)

On August 6, 2020, Petitioner entered into a plea agreement with the Government as to these charges.  (Docket No. 20-675 at ECF No. 29.)  Pursuant to that agreement, Petitioner agreed to plead guilty to a two-count information charging him with one count of dealing in firearms without a license in violation of 18 U.S.C. § 922(a)(1)(A) and one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) in exchange for the Government not to pursue further criminal charges arising out of the series of firearms sales Petitioner made to federal agents and informants in 2019.  (*Id.* at 1.)  In that agreement, Petitioner was informed that the § 922(a)(1)(A) charge carried a maximum sentence of five years' imprisonment, while the § 922(g)(1) charge carried a maximum sentence of 10 years' imprisonment, alongside appropriate fines and fees.  (*Id.* at 2.)  Petitioner was further informed that his sentence would be left to the sole discretion of the sentencing judge, after consideration of the advisory sentencing guidelines.

(*Id.*)  In his plea agreement, Petitioner also agreed to a number of stipulations as to his guidelines range.  (*Id.* at 7-8.)  These stipulations included the base offense level, an offense level increase for the number of firearms, an offense level increase for the trafficking of firearms, and that Petitioner would receive an appropriate guidelines reduction for acceptance of responsibility.  (*Id.* at 7-8.)  The parties agreed that they could each present arguments as to a potential guidelines increase based on an obliterated serial number on the Kel-Tec pistol.  (*Id.* at 7.)  Finally, the agreement contained an appellate waiver in which Petitioner agreed not to file any appeal or collateral attack to the extent that his sentence was imposed was within or below the range applicable to a guidelines level of 25 – the guidelines level which would apply if Petitioner were successful in challenging the obliterated serial number enhancement.  (*Id.* at 8.)

Prior to entering his guilty plea, Petitioner and his counsel also prepared an application for permission to enter a plea of guilty.  (Docket No. 20-675 at ECF No. 30.)  As part of that application, Petitioner confirmed that his attorney had explained to him that he faced a maximum sentence of 5 years on count one, and a total maximum sentence of 15 years including the 10-year maximum applicable to count 2.  (*Id.* at 3.)  The application also confirmed that petitioner understood the rights he was waiving by pleading guilty, and understood that his sentence would be in the sentencing judge's discretion following a consideration of the applicable advisory guidelines range.  (*Id.*at 4-6.)

Petitioner entered his guilty plea before the Court on August 6, 2020.  (Docket No. 20-675 at ECF No. 47.)  During his plea colloquy, the Government confirmed that, pursuant to his plea agreement, Petitioner's guilty plea was being made in exchange for a guarantee that the Government would not pursue further charges against him based on his trafficking in arms, as well as the sentencing stipulations contained in his plea agreement.  (*Id.* at 5-6.)  Petitioner thereafter confirmed that he had had an opportunity to discuss the agreement with counsel, that he understood

the terms of the agreement, that he was pleading guilty of his own free will, hat his sentence would be issued in the sentencing judge's discretion after reviewing the advisory guidelines, and that the sentence issued could be up to the statutory maximum of 15 years regardless of the recommended range or any guesses as to potential sentencing by counsel. (*Id.* at 7-15.) Petitioner thereafter confirmed the terms of his plea agreement, confirmed that he understood those terms, had discussed those terms to his satisfaction with counsel, provided a factual basis, and entered his guilty plea. (*Id.* at 16-26.)

At sentencing, defense counsel unsuccessfully opposed the guidelines enhancement for the obliterated serial number and presented an argument in Petitioner's defense to suggest that, but for the desire of a government informant to secure purchases to aid in his own sentencing, Petitioner would not have been involved in so many weapons transactions. (Docket No. 20-675 at ECF No. 48 at 1-12.) The Court rejected this argument, noting that Petitioner had not engaged in a single sale, but rather a series of transactions involving seven different firearms and many rounds of ammunition which Petitioner had illegally secured, and counsel had failed to show that Petitioner's will was overborne by the Government's actions in this matter. (*Id.* at 12-18.) After considering counsel's arguments, Petitioner's statement, and a number of statements from Petitioner's family, the Court ultimately sentenced Petitioner to 31 months imprisonment on the trafficking charge and a consecutive 120 months on the felon in possession charge, for an aggregate prison term of 151 months. (*Id.* at 18-31.)

Prior to his current offense conduct, Petitioner has a long history of prior state level criminal offenses. His prior convictions include a 2001 weapons possession offense, a number of drug possessions convictions from 2006, 2007, 2016, and 2017, as well as a number of minor offenses. (*See* PSR at ¶50-61.) Indeed, Petitioner remained on state court probation between August 2017 through August 4, 2019. (PSR at ¶59.) Petitioner was thus on probation at the time

of three of the six controlled weapons purchases which gave rise to his current convictions.  (PSR at ¶1, 59.)

## II.  LEGAL STANDARD

A prisoner in federal custody may file a motion pursuant to 28 U.S.C. § 2255 challenging the validity of his or her sentence.  Section 2255 provides, in relevant part, as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.  Unless the moving party claims a jurisdictional defect or a constitutional violation, to be entitled to relief the moving party must show that an error of law or fact constitutes "a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure."  *United States v. Horsley*, 599 F.2d 1265, 1268 (3d Cir. 1979) (quoting *Hill v. United States,* 368 U.S. 424, 429 (1962)), *cert. denied* 444 U.S. 865 (1979); *see also Morelli v. United States*, 285 F. Supp. 2d 454, 458-59 (D.N.J. 2003).

## III.  DISCUSSION

### A.  No evidentiary hearing is necessary in this matter

A district court need not hold an evidentary hearing on a motion to vacate where "the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *United States v. Booth*, 432 F.3d 542, 545-56 (3d Cir. 2005); *United States*

*v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992). "Where the record, supplemented by the trial judge's personal knowledge, conclusively negates the factual predicates asserted by the petitioner or indicate[s] that petitioner is not entitled to relief as a matter of law, no hearing is required." *Judge v. United States*, 119 F. Supp. 3d 270, 280 (D.N.J. 2015); *see also Gov't of V.I. v. Nicholas*, 759 F.2d 1073, 1075 (3d Cir. 1985); *see also United States v. Tuyen Quang Pham*, 587 F. App'x 6, 8 (3d Cir. 2014); *Booth*, 432 F.3d at 546. Because Petitioner's claims are either time barred or without merit for the reasons expressed below, no evidentiary hearing is necessary in this matter.

**B.    Petitioner's claims are without merit or time barred**

In his motion to vacate sentence, Petitioner raises a number of claims in which he asserts that his trial counsel was constitutionally deficient. The standard applicable to such claims is well established:

> [c]laims of ineffective assistance are governed by the two-prong test set forth in the Supreme Court's opinion in *Strickland v. Washington*, 466 U.S. 668 (1984). To make out such a claim under *Strickland*, a petitioner must first show that "counsel's performance was deficient. This requires [the petitioner to show] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687; *see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007). To succeed on an ineffective assistance claim, a petitioner must also show that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial . . . whose result is reliable." *Strickland*, 466 U.S. at 687; *Shedrick*, 493 F.3d at 299.
>
> In evaluating whether counsel was deficient, the "proper standard for attorney performance is that of 'reasonably effective assistance.'" *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005). A petitioner asserting ineffective assistance must therefore show that counsel's representation "fell below an objective standard of reasonableness" under the circumstances. *Id.* The reasonableness of counsel's representation must be determined based on the particular facts of a petitioner's case, viewed as of the time of the challenged conduct of counsel. *Id.* In scrutinizing counsel's

performance, courts "must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Even where a petitioner is able to show that counsel's representation was deficient, he must still affirmatively demonstrate that counsel's deficient performance prejudiced the petitioner's defense. *Id.* at 692-93. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. The petitioner must demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Shedrick*, 493 F.3d at 299. Where a "petition contains no factual matter regarding *Strickland's* prejudice prong, and [only provides] . . . unadorned legal conclusion[s] . . . without supporting factual allegations," that petition is insufficient to warrant an evidentiary hearing, and the petitioner has not shown his entitlement to habeas relief. *See Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010). "Because failure to satisfy either prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible, [*Strickland*, 466 U.S. at 697-98]," courts should address the prejudice prong first where it is dispositive of a petitioner's claims. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

*Judge v. United States*, 119 F. Supp. 3d 270, 280-81 (D.N.J. 2015).

In his first claim, Petitioner contends that his counsel provided ineffective assistance in relation to his decision to plead guilty as he alleges counsel suggested to him that if he went to trial and were convicted following an indictment, he would potentially face a guidelines range as high as 210 to 262 months, when under the plea agreement Petitioner entered, he was faced with a statutory maximum of 180 months. In the context of a guilty plea, a petitioner seeking to show prejudice must "show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial." *United States v. Bui*, 795 F.3d 363, 367 (3d Cir. 2015) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). As the Third Circuit has explained,

> [w]hen addressing a guilty plea, counsel is required to give a defendant enough information "'to make a reasonably informed decision whether to accept a plea offer.'" *Shotts v. Wetzel*, 724 F.3d 364, 376 (3d Cir. 2013) (quoting *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992), *cert. denied*, [571 U.S. 1224] (2014). We have identified potential sentencing exposure as an important factor in the decisionnmaking process, stating that "[k]nowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty." *Day*, 969 F.2d at 43. In order to provide the necessary advice, counsel is required "to know the Guidelines and relevant Circuit precedent . . . ." *United States v. Smack*, 347 F.3d 533, 538 (3d Cir. 2003). However, "an erroneous sentencing prediction by counsel is not ineffective assistance of counsel where . . . an adequate plea hearing was conducted." *United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007).

*Bui*, 795 F.3d at 367.

Here, Petitioner's first claim is chiefly concerned with Petitioner's belief that, in discussing comparative sentencing exposure, counsel suggested he could receive a sentence after a trial in excess of the 180-month maximum[1] which was applicable to the charges in the information to which he agreed to plead guilty, which he believes amounts to counsel vastly overstating his exposure. In so arguing, however, Petitioner completely ignores the *context* of his guilty plea. Petitioner did not plead guilty after the Government had gone through the procedural hurdle of securing an indictment, but rather agreed to plead guilty to an information which was limited to two charges for the express purposes of Petitioner's plea agreement. Had Petitioner refused the deal and proceeded to trial, the Government would have had to indict him and would have been

---

[1] In his reply brief (ECF No. 18), Petitioner attempts to adjust his claim, asserting that he was actually subject only to an actual maximum of 10 years. Petitioner, however, is clearly mistaken on that point – he pled guilty to two separate offenses, a trafficking offense with a five year statutory maximum, and a felon in possession of a weapon charge with a ten year maximum, for a total maximum sentence exposure of fifteen years so long as the trial court issued, as it did in this case, consecutive sentences for the two offenses. *See* 18 U.S.C. §§ 922(a), (g); 18 U.S.C. § 924 (setting forth applicable penalties for the various violations of § 922). Petitioner's assertion that he was subject to only a ten-year maximum in his reply brief is thus clearly mistaken.

free as part of that indictment to charge Petitioner with any number of additional charges including additional weapons trafficking and possession charges based on the considerable number of transactions in which he engaged and the total number of firearms he possessed and sold. Thus, in providing advice to Petitioner as to his plea agreement, counsel was required to make a reasonable estimate of the exposure Petitioner would have faced at trial *after* a formal indictment which was likely to contain additional charges beyond those in the limited information to which Petitioner chose to plead guilty. Indeed, that very plea agreement expressly states that one of the chief benefits Petitioner obtained was limiting his exposure to only the charges in the information rather than the complete universe of charges the Government could have brought had they been required to indict him. Counsel's estimate as described by Petitioner of a significantly higher exposure had he proceed to and lost at trial following a formal indictment was thus entirely reasonable and does not amount to deficient performance in this context. As counsel's advice was within the realm of competent advice, and Petitioner was clearly made aware of the maximum sentence applicable to his guilty plea during his plea hearing, Petitioner has not show that counsel's advice in relation to the plea hearing amounts to deficient performance, and his claim of ineffective assistance of counsel is without merit.

In a related claim, Petitioner also asserts that counsel was ineffective during plea negotiations, arguing that counsel did not conduct actual negotiations but rather just referred the Government's offer to Petitioner. Petitioner in essence is asserting that, had counsel been a better negotiator, he may have been able to secure a more beneficial plea option. A petitioner, however, has no right to a "better" plea deal than the one he chose to accept, and cannot show prejudice based on alleged failure to negotiate a better deal without providing concrete evidence to support the assertion that the Government would have offered a better deal, Petitioner would have accepted it, and the court would have accepted that bargain. *See, e.g., Burger v. Kemp*, 483 U.S. 776, 785-

86 (1987) (petitioner cannot show prejudice based on the failure to secure a better deal without evidence indicating that the prosecutor "would have been receptive to a [better] plea bargain"); *Eiseman v. Herbert*, 401 F.3d 102, 109 (3d Cir. 2005) (the "failure to obtain a [better] plea bargain is not evidence of ineffective assistance of counsel when the record does not contain evidence that one might have been offered"); *see also Amato v. United States*, No. 19-19449, 2021 WL 5578850, at *5 (D.N.J. Nov. 29, 2021). In this matter, there is no evidence to suggest that the Government was amenable to a more favorable plea agreement. Given the strength of the evidence of against Petitioner, there is no reason to expect that the Government would have been interested in offering Petitioner a more favorable plea agreement. Petitioner thus cannot show that he was prejudiced by counsel's alleged failings during plea negotiations, and that claim, too, fails to set forth a valid basis for habeas relief.

Petitioner next contends that counsel proved ineffective at sentencing in failing to more forcefully argue against the obliterated serial number guidelines enhancement and that his sentence should be reduced based on the contention that his sale of firearms amounted to a form of entrapment. Counsel, however, did present both arguments to the Court – more specifically, why the obliterated serial number enhancement did not apply and why Petitioner should be entitled to a reduced sentence in light of his contention that his repeated sales of firearms were the result of prodding by a government informant. The Court, after fairly considering these arguments, rejecting both on the merits, finding that Petitioner had not shown that his will had been overborn and that the obliterated serial number enhancement applied as one of the firearms Petitioner sold had a serial number which had been significantly damaged and was illegible prior to Government attempts to recover at least part of that serial number. Petitioner's argument regarding the enhancement in this case generally relied on two principles – that the serial number in question was able to be partially recovered through technical means and that the weapon in question should

not qualify for the enhancement because it had a broken hammer spring and was inoperable at the time of the sale. As to the second point, relevant federal law defines as a firearm any weapon "which will or is designed to or may readily be converted to expel a projectile by the action of an explosion." 18 U.S.C. § 921(a)(3); *see also* U.S.S.G. § 2K2.1 cmt. n. 1. The firearm in this matter did have a broken hammer spring, but as the Court noted, it was easily and readily repaired with the replacement of that spring – a part commonly and easily purchased from the weapon's manufacturer. (*See* Docket No. 20-675 at ECF No. 48 at 4.) The Kel Tec pistol in question thus clearly meets the definition of a firearm sufficient to support the enhancement. It is likewise clear that the obliterated serial number enhancement applies even in those cases where a serial number is only partially destroyed or where the Government can successfully recover portions of the serial number through chemical means. *See, e.g., United States v. Briggs*, 382 F. App'x 138, 141 (3d Cir. 2010); *see also United States v. Warren*, 820 F.3d 406, 408 (11th Cir. 2016) (sentencing enhancement requires only that the serial number be at least partially altered or obliterated); *Haynes v. United States*, No. 19-5008, 2021 WL 236340, at *4 (D.N.J. Jan. 25, 2021) ("[t]here is no legal support for [the] assertion that the enhancement cannot be applied [where the Government] has been able to recover an altered or obliterated serial number"). As the weapon in question clearly had an at least partially obliterated serial number – a point Petitioner himself actually admitted in his plea colloquy – and was readily rendered capable of firing with the replacement of a single hammer spring – the obliterated serial number enhancement clearly applied, and counsel was not ineffective in failing to better argue this point.

Petitioner's assertions regarding the sentencing entrapment argument are equally without merit. Although the Third Circuit has not explicitly adopted nor rejected the concept of a sentence reduction based on sentencing entrapment, such an argument would, at minimum, require that the defendant establish that "official conduct leads an individual otherwise indisposed to dealing in

larger quantity or different type of [illicit product] to do so, and the result is a higher sentence." *United States v. Sed*, 601 F.3d 224, 230 (3d Cir. 2010) (internal quotations omitted). As the Court noted in this matter, Petitioner has a lengthy criminal history, including both weapons offenses and offenses relating to selling controlled substances, and Petitioner's arguments that he was entrapped into selling firearms he otherwise alleges he would not have sold is heavily undermined by the fact that Petitioner repeatedly engaged in the illegal sale of firearms in this matter –engaging in six separate sales of seven firearms to the Government's informants and agents. Thus, even if one could argue that the Third Circuit should accept the concept of a sentencing entrapment defense, such a defense is patently inapplicable in a case such as this where Petitioner's own repeated conduct clearly shows that he was not indisposed to the illegal sale of firearms he was forbidden from even possessing. Accordingly, Petitioner's argument is utterly without merit, and counsel thus could not have been ineffective in allegedly failing to more forcefully argue this point at sentencing. Petitioner's sentencing arguments present no basis for habeas relief.

Petitioner also asserts that trial counsel also proved ineffective in discussing with Petitioner a prospective appeal. According to Petitioner, counsel advised against the filing of an appeal, and Petitioner therefore did not request that she file one on his behalf. Petitioner contends, however, that he made that decision because of counsel's "bad advice" and failure to fully discuss with him the "pros and cons of taking the appeal." (ECF No. 1-1 at 8.) Petitioner admits in his motion to vacate sentence, however, that he never instructed or requested that counsel file an appeal on his behalf, but instead relied on her allegedly poor advice in not pursuing an appeal. (*Id.*) As the Third Circuit has explained, such claims are governed by the Supreme Court's ruling in *Roe v. Flores-Ortega*, 528 U.S. 470 (2000):

> [in *Flores-Ortega*,] the Court addressed whether counsel may be found deficient for failing to file a notice of appeal absent specific instruction from the defendant not to do so. Because the question

concerned whether counsel's representation was constitutionally defective, the Court held that the two-part *Strickland* test governed its inquiry. [*Roe*, 528 U.S. at 476-77.] Applying that standard to the particular facts before it, the Court held that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480[.] The Court further explained that it "employ[ed] the term 'consult' to convey a specific meaning – advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* at 478[.] Additionally, the Court instructed that courts undertaking this inquiry, as with all ineffective-assistance claims, "take into account all the information counsel knew or should have known." *Id.* at 480 . . . (citing *Strickland* [*v. Washington*, 466 U.S. 668, 690 (1984)]).

With respect to *Strickland*'s prejudice prong, the Court held that the harmless-error inquiry applied and that relief could not be granted unless the defendant "demonstrate[s] that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484[.] The Court did not identify any determinative factors in this regard, but did stress that "evidence that there were non-frivolous grounds for appeal or that the defendant at issue promptly expressed a desire to appeal will often be highly relevant." *Id.* at 485[.]

*Shedrick*, 493 U.S. at 300-01; *see also Garza v. Idaho*, 586 U.S. 232 (2019) (*Flores-Ortega* rule applies even where there is an applicable appeal waiver).

Here, Petitioner does not assert that he ever actually requested that counsel file an appeal on his behalf, and instead in his motion to vacate sentence states that he did not make such a request after heeding counsel's advice that there was not a good basis for an appeal. Petitioner has likewise failed to show that counsel had any reason to believe that a rational defendant in Petitioner's position, *i.e.,* a defendant who pled guilty and whose only apparent arguments related to his sentencing were belied by the applicable case law, would have desired to appeal. Indeed, the implications of Petitioner's assertions are that he agreed with counsel that filing an appeal would

have been an exercise in futility.  Although Petitioner vaguely asserts that counsel's advice was not sufficient or did not sufficiently discuss the pros and cons of an appeal, his claim that counsel should have known that with better advice he would have wanted an appeal largely rests on his after-the-fact belief that he had viable claims in regard to the obliterated serial number enhancement and as to his sentencing entrapment argument.  As explained above, the claims Petitioner belatedly believes he should have pursued on appeal were not supported by the relevant case law, a point counsel essentially conceded during the sentencing hearing.  As counsel apparently conveyed this to Petitioner, and Petitioner does not allege he asked counsel to file an appeal and he instead suggests he agreed an appeal would be fruitless, the record presents no basis to support the conclusion that counsel should have known that a rational defendant in Petitioner's position would have desired to pursue an appeal.  Petitioner thus cannot establish that his counsel was ineffective in failing to consult with him further or file a notice of appeal on his behalf.

In addition to the claims discussed above raised in Petitioner's original motion to vacate sentence, Petitioner also filed two supplemental motions in which he raises two new claims, both of which are premised at least in part on the Supreme Court's decision in *New York Rifle & Pistol Assn. v. Bruen*, 597 U.S. 1 (2022).  (*See* ECF Nos. 9-10, 19.)   In November 2022, Petitioner filed a motion raising a claim in which he asserted that, in light of *Bruen*, the obliterated serial number enhancement should not apply to his case, and counsel was ineffective for not foreseeing the outcome in *Bruen* and raising an argument on this basis.  (*See* ECF No. 10.)  Approximately a year later in November 2023, Petitioner filed his second supplement, in which he raises a claim asserting that 18 U.S.C. § 922(g)(1) is unconstitutional as applied to him in light of *Bruen*, and his conviction under that statute should therefore be invalidated.

Both of these claims were raised for the first time well after the one-year limitations period applicable to this § 2255 matter expired.  Motions to vacate sentence are subject to a one year

statute of limitations which is evaluated on a claim by claim basis. *See* 28 U.S.C. § 2255(f); *Richardson v. United States*, No. 20-10045, 2023 WL 5623943, at *3 (D.N.J. Aug. 31, 2023); *see also Fielder v. Varner*, 379 F.3d 113, 122 (3d Cir. 2004) (habeas limitations periods are determined on a claim-by-claim basis and the filing of a timely claim will not render later filed claims timely absent relation back). That limitations period generally runs from the date the conviction becomes final, which occurs in cases where no appeal was filed where the time for filing a direct appeal expired. *Kapral v. United States*, 166 F.3d 565, 577 (3d Cir. 1999). In this matter, Petitioner's judgment of conviction was entered on August 16, 2021, and his conviction became final fourteen days later when Petitioner failed to file a direct appeal. *Id.*; *see also* Fed. R. App. P. 4(b)(1)(A)(i) (appeal of conviction due within fourteen days of the entry of judgment). Thus, absent a basis for tolling or a later starting date for the limitations period, Petitioner's limitations period in this matter expired on August 30, 2022, one year from the date on which his conviction became final. Both of Petitioner's supplemental claims were filed well after this date.

In this matter, Petitioner has not presented any basis for the tolling of the limitations period, nor does this Court perceive any basis for tolling from the record. Instead, Petitioner appears to believe that his limitations period is extended by the Supreme Court's decision in *Bruen*. Pursuant to 28 U.S.C. § 2255(f)(3), a federal prisoner's habeas limitations period may receive a later start date where his claim rests on a "right newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." In such cases, the one-year limitations period will run from the date on which "the right asserted was initially recognized by the Supreme Court." *Id.* In *Bruen*, the Supreme Court neither invalidated § 922(g)(1), nor invalidated the applicability of the obliterated serial number enhancement; instead the Court found unconstitutional state licensure schemes which permitted states to deny private citizens permits to carry firearms on discretionary bases such as requirements that citizens be required to show

"proper cause" why they should be permitted to carry firearms.  597 U.S. at 17-70.  While the Court certain clarified in *Bruen* the analytical framework for facial and as applied challenges to statutes premised on violations of the Second Amendment, nothing in the Court's holding or decision passed on the issues Petitioner now seeks to raise – the lawfulness of obliterated serial number enhancements or the lawfulness of statues barring felons from possessing weapons.  *Id.* Indeed, in their concurrence two justices in the *Bruen* majority explicitly noted that *Bruen* in no way stood for the invalidation of limitations on felons possessing firearms.  *Id.* at 80 (Kavanaugh, J., concurring joined by the Chief Justice).

Since *Bruen*, the Supreme Court has upheld similar provisions at least temporarily barring individuals from possessing firearms based on perceived dangerousness.  *See United States v. Rahimi*, 602 U.S. 680 (2024) (upholding 18 U.S.C. § 922(g)(8)'s provision barring those under domestic violence restraining orders from possessing firearms).  The Court has thus not yet recognized the right on which Petitioner relies – i.e., that felons may not be barred from possessing firearms,[2] or that the guidelines enhancement for obliterating the serial number of a firearms violates the Second Amendment.  As the Supreme Court has not yet recognized the rights on which Petitioner relies, § 2255(f)(3) does not provide a later running date for the statutes of limitations. *See, e.g., Richardson v. United States*, No. 23-20820, 2025 WL 1703059, at *2 (D.N.J. June 18,

---

[2] The Court does note that while the Third Circuit has ruled that an individual with a single non-violent conviction may not be permanently disarmed in violation of the Second Amendment, *see Range v. Att'y Gen.*, 124 F.4th 218 (3d Cir. 2024), they have also held that those under parole, probation, or supervised release, such as Petitioner during half of the possessions and sales giving rise to his current conviction, may be prohibited from possessing firearms until such time as they complete that portion of their criminal sentence. *See United States v. Quailes*, 126 F.4th 215, 221-24 (3d Cir. 2025) (felons under state parole, probation, or supervised release may be barred from possessing firearms at least until their sentence concludes without violating the Second Amendment).  Thus, given Petitioner's probation status at the time of several of the transactions underlying his conviction, currently applicable Third Circuit law would still support Petitioner's conviction under § 922(g)(1) for the weapons he possessed and sold in the first several controlled buys even were Petitioner's claims not time barred.

2025) (*Bruen* did not announce a new rule of constitutional law applicable to persons with criminal convictions); *United States v. Neal*, No. 23-1779, 2024 WL 1095814, at *2 (W.D. Pa. Mar. 13, 2024) (same); *Battle v. United States*, No. 23-3438, 2023 WL 6307515 at *3 (D.N.J. Sept. 28, 2023).

As Petitioner is not entitled to a later start date for the limitations period and has not even attempted to show any proper basis for the tolling of the limitations period, his two supplemental claims are time barred unless they relate back to the filing of Petitioner's original motion to vacate sentence. Pursuant to Federal Rule of Civil Procedure 15(c), a later raised claim will relate back to an original filing, and therefore render the later raised claim timely if the original claim was filed timely, where the new claim "arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." *Wilkerson v. Superintendent Fayette SCI*, 871 F.3d 221, 236 (3d Cir. 2017) (quoting Fed. R. Civ. P. 15(c)(1)(B)). The Supreme Court clarified the applicability of this rule in *Mayle v. Fenix*, 545 U.S. 644 (2005). In so doing, the Court held that in determining whether a claim arose out of the same conduct, transaction, or occurrence, a court cannot define the relevant frame too broadly, and even where a petitioner raises the same type of claim – such as ineffective assistance of counsel – it will not relate back where it concerns issues different in time and type than those addressed in the original claim. *Id.* at 657-64. It is not sufficient that a claim merely challenges the same conviction or sentence; a new claim will only relate back to an originally raised claim where it is "tied to a common core of operative facts" with one of the originally raised claims. *Id.*; *see also Wilkerson*, 871 F.3d at 237-38.

Here, Petitioner's later raised claims assert that counsel was ineffective in not raising a constitutional challenge to the obliterated serial number enhancement based on the reasoning of *Bruen*, and that his conviction under § 922(g)(1) is invalid in light of *Bruen* and its progeny. Petitioner's second challenge – seeking the vacation of the § 922(g)(1) conviction – is clearly

different in time and type from any claim raised in Petitioner's motion to vacate sentence, and is not tied to a common core of operative facts with any originally raised claim.  Petitioner's challenge to his § 922(g)(1) conviction therefore does not relate back to his original filing, and is clearly time barred a such.

Turning to Petitioner's challenge to the obliterated serial number enhancement, Petitioner's supplemental challenge relies on *Bruen* and asserts  that counsel failed to presage and raise a *Bruen* challenge.  Petitioner further asserts that even aside from ineffective assistance, the enhancement is unconstitutional on its own.  Although this claim challenges the same enhancement addressed in one of Petitioner's claims discussed above, it is sufficiently different that it is not tied to a common core of operative facts – it does not challenge the enhancement based on weapon operability or the recovery of part of a serial number.  Rather, it instead challenges the enhancement based on a constitutional challenge arising out of intervening case law.  This claim thus does not relate back to Petitioner's earlier claims and is therefore time barred.[3]  As all of Petitioner's original claims are without merit for the reasons discussed above, and both of his supplemental claims are clearly time barred, Petitioner's motion to vacate and supplemental motions to vacate must be denied.

---

[3] To the extent this claim rests on assertions of ineffective assistance of counsel, the Court notes that counsel cannot be ineffective in failing to foresee an intervening change in the law, and any assertion based on counsel's failure to foresee and argue a *Bruen* claim prior to *Bruen* is without merit as an ineffective assistance of counsel claim.  *See United States v. Doe*, 810 F.3d 132, 154 (3d Cir. 2015) ("failing to predict a change in the law is not deficient performance").

C.      **Certificate Of Appealability**

Pursuant to 28 U.S.C. § 2253(c), the petitioner in a § 2255 proceeding may not appeal from the final order in that proceeding unless he makes "a substantial showing of the denial of a constitutional right."  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Because all of Petitioner's claims are meritless or time barred for the reasons expressed above, Petitioner has failed to make a substantial showing of a denial of a constitutional right, and his motion is not adequate to receive encouragement to proceed further.  This Court therefore denies Petitioner a certificate of appealability.


IV.    <u>**CONCLUSION**</u>

For the reasons set forth above, Petitioner's motion to vacate sentence (ECF No. 1) and supplemental motions to vacate (ECF Nos. 9-10, 19) are **DENIED**, and Petitioner is **DENIED** a certificate of appealability.  An appropriate order follows.


Date: January 16, 2026

                                    s/ Zahid N. Quraishi
                                    **ZAHID N. QURAISHI**
                                    **UNITED STATES DISTRICT JUDGE**